**RECEIVED**

SEP 2 6 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JOSEPH BERBERICH | CIVIL ACTION NO. 04-1996 |
| VERSUS | JUDGE DOHERTY |
| PATTERSON SERVICES, INC. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Currently pending before the Court is a Motion to Dismiss [Doc. 30] filed by defendant, Patterson Services, Inc. ("Patterson"), asking the Court to dismiss the intervening claims of Dutil Fence Company, Inc. ("Dutil"), arguing that Dutil has not asserted a claim upon which relief can be granted.[1] The motion is opposed by Dutil. For the following reasons, the motion will be GRANTED.

## BACKGROUND

Plaintiff, Joseph Berberich, filed suit against Patterson for injuries incurred on May 3, 2004, allegedly due to Patterson's negligence. Plaintiff asserts that on that date, he and other employees of his company, Dutil, were installing a fence at Patterson's facilities. While installing the fence, a forklift operator employed by defendant attempted to remove an existing fence post when a chain attached to the forklift's lifting element snapped, striking plaintiff, and causing injuries to plaintiff's back.

Dutil intervened in plaintiff's lawsuit, asserting that it is entitled to damages for loss of profits, revenues and business opportunities due to the injuries incurred by plaintiff, who is Dutil's sole shareholder, chief executive officer and chief operating officer. Intervenor alleges that due to

---

[1] A previous Motion to Dismiss the intervening claims of Dutil was filed by Patterson on June 2, 2005. The motion was denied on August 10, 2005 for failure to carry its burden of proof.

defendant's negligence, Mr. Berberich has been unable to perform his regular duties, and as a result, intervenor has had to hire additional labor and has been unable to pursue business in its regular manner.

Patterson subsequently filed the pending Motion to Dismiss arguing: (1) "Louisiana law does not recognize a claim against a tortfeasor for lost profits or other consequential damages resulting from injury to a corporation's employee," [Doc. 30, p. 2] and (2) intervenor "is not entitled to recover as a corporation on behalf of its 'shareholder' as the damages suffered were not direct damages to the corporation, but consequential damages."[2] [Doc. 30, p. 6]

## LAW AND ARGUMENT

### I. Standard of Review

Defendant seeks dismissal of Intervenor's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("failure to state a claim upon which relief can be granted"); therefore, this Court must limit its review to the facts alleged in the Complaint. Fed.R.Civ.P. 12(b)(6). A motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." Tel-Phonic Services, Inc. v. TBS International, Inc., 975 F.2d 1134, 1137 (5th Cir. 1992). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957). "The plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." Oppenheimer v. Prudential Securities, Inc., 94 F.3d 189, 194 (5th Cir. 1996).

---

[2] Essentially defendant is making two arguments: the first is Dutil has no cause of action; the second is that although Dutil may have a right of action, it has no cause of action.

In light of the directives noted above, this Court accepts, for purposes of this motion, that Dutil has suffered the claimed losses, and that these losses resulted from the injuries to plaintiff, which were caused by defendant's negligence. The Court now addresses whether or not Dutil is entitled to relief under any legal theory.

## II. Applicable Law

As jurisdiction in this matter is premised upon 28 U.S.C. § 1332 (diversity of citizenship), Louisiana law governs the substantive issues of law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). As such, the Court is duty bound to apply Louisiana law. The Fifth Circuit's guidance to District Courts in this endeavor is as follows:

> To determine state law, federal courts sitting in diversity look to the final decisions of the state's highest court. In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case. . . .
>
> [The court must] employ the appropriate Louisiana civilian methodology to decide the issues presented the way that [the court] believe[s] the Supreme Court of Louisiana would decide them. Under Louisiana's Civil Code, the only authoritative sources of law are legislation and custom. Thus, in Louisiana, courts must look first and foremost to the state's primary sources of law: the state's constitution, codes, and statutes. As we have previously recognized, the primary basis of law for a civilian is legislation, and not (as in the common law) a great body of tradition in the form of prior decisions of the courts. Indeed, *stare decisis* is foreign to the Civil Law, including Louisiana. Jurisprudence, even when so cohesive and entrenched as to rise to the level of *jurisprudence constante* is merely a secondary law source. Therefore, while it is true that we will not disregard Louisiana appellate court decisions unless we are convinced by other persuasive data that the highest court of the state would decide otherwise, particularly if numerous decisions are in accord on a given issue - the so-called *jurisprudence constante* - we are not strictly bound by them.

American International Speciality Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003) (internal citations and quotations omitted).

## III. Discussion [3]

### A. Whether Dutil is "entitled to recover as a corporation on behalf of its shareholder as the damages suffered were not direct damages to the corporation, but consequential damages."

Patterson argues "plaintiff [sic] is attempting to confuse the issue before this Court by referencing cases . . . [that stand] for the proposition that the party to sue for alleged damages to a corporation is the corporation itself, not the individual shareholder." [4] [Doc. 30, p. 6] Patterson argues that intervenor cites the Court to cases in its opposition which intervenor asserts stand for the proposition that "in a case such as this one, the corporation has a right of action." [Doc. 32, p. 8] The cases cited by Intervenor are Richard v. Morgan, 433 So.2d 263 (La.App. 1st Cir. 1983) and Afeman v. Insurance Co. of North America, 307 So.2d 399 (La. App. 4th Cir. 1975). Richard and Afeman hold that when a corporation has sustained a loss, then only the corporation (and not its shareholders, employees, etc.) has the procedural capacity to sue for recovery of its losses. The reasoning of those courts is as follows:

> Corporations are intellectual beings, different and distinct from all the persons who compose them. Corporations must be given a name, and it is in that name that they must sue or be sued, and do all their legal acts. The corporation has the capacity to sue to enforce its rights in the corporate name.

Richard at 263 (citations omitted). The Richard court further noted the language of Mahfouz v. Ogden, 380 So.2d 646 (La. 1st Cir. 1979), wherein the First Circuit stated: ". . . that plaintiff, who

---

[3] The Court has reversed the order of defendant's arguments, as it finds it is more beneficial to address defendant's second argument, which deals with a corporation's right of action, at the outset, followed by an analysis of whether Dutil has a cause of action.

[4] In its opposition to the previous motion to dismiss, Dutil argued, "Berberich's concerns, and the subsequent intervention were motivated by a line of cases holding that a corporation, and not its shareholders, is the proper party to seek recovery for damages to the corporation." [Doc. 23, p. 2] While Dutil has not repeated that statement in its opposition to the present Motion to Dismiss, the Court finds that piece of information to be helpful to the reader for clarification as to the motivation behind Patterson's making this argument.

conducted business in corporate form and reaped the benefits of incorporation, cannot sue individually for damages incurred by the corporation, . . ." (citations omitted).

The cases cited by intervenor address the concept of "right of action," not "cause of action." None of the cases cited by intervenor went so far as to hold that the corporation actually had a <u>cause of action</u> to recover for any loss - in fact, the courts were silent on that issue; rather, the cases merely hold that the proper party to sue for damages sustained by a corporation is the corporation itself. Furthermore, this Court would refer the parties to <u>Mioton v. Del Corral</u>, 132 La. 790 (La. S. Ct. 1913), wherein the Louisiana Supreme Court held that the sole shareholder of a corporation does not have the right to sue in his own name, or on behalf of the corporation, for recovery of damage to corporate property, as such right lies with the corporation itself. Finally, the court notes that La. R.S. 12:41(B)(3) states: "...it is hereby specifically provided that every corporation shall have authority...[t]o sue and be sued in its corporate name." As such, this Court holds that any claim brought in this matter for losses sustained by Dutil belongs to Dutil alone.

**B. Whether Louisiana law allows a corporation to recover damages from a tortfeasor for lost profits, lost revenues and loss of business opportunities caused by injuries to its employee.**

Patterson argues that Louisiana law does not recognize a claim by a corporation against a tortfeasor for lost profits or other consequential damages resulting from injury to the corporation's employee. Defendant cites two cases from the Eastern District of Louisiana and three cases from the Louisiana First Circuit Court of Appeals in support of its position. The parties have cited no decisions of the Louisiana Supreme Court on this issue, nor has the Court, following its independent research, found any decisions of the Louisiana Supreme Court addressing the exact issue at hand. Instead, counsel for intervenor has cited the Court to the Louisiana Constitution, Article 1, Section

22 which guarantees that every person shall have an adequate remedy by due process of law and justice for injuries sustained to him and his person, property, reputation, or other rights. He has also cited the Court to Louisiana Civil Code article 2315 which provides in pertinent part, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it," as well as Louisiana Civil Code article 2316 which provides, "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

Turning our attention to the guidance provided by the Louisiana appellate courts, this Court notes several Louisiana circuit courts have routinely held that a corporation has no claim against a tortfeasor for the corporation's lost profits or other consequential damages that result from injury to the corporation's employee. *See e.g.* Evan's Vending Services v. Raymond, 666 So.2d 334, 336 (La. App. 1st Cir. 1996); Peterson v. W. World Ins. Co., 491 So.2d 78, 80 (La. App. 1st Cir. 1986); Baughman Surgical Associates Ltd. v. Aetna Cas. & Sur. Co., 302 So.2d 316, 318 (La. App. 1st Cir. 1974); Fuksman v. General Motors Corp., 447 So.2d 74, 75 (La. App. 4th Cir. 1984); and Domingue v. Reliance Ins. Co., 619 So.2d 1220 (La. App. 3rd Cir. 1993).[5] These cases all hold that under Louisiana Civil Code article 2315, recovery is limited to the direct and proximate results of a tortfeasor's acts, and where a third party corporation suffers damages for injuries to its employee, such damage is too remote, speculative and evasive to become the subject of a direct action and tort.

While there appears to be no Louisiana Supreme Court jurisprudence exactly on point, two cases issued by that Court are of interest for purposes of this motion. In PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058 (La. S. Ct. 1984), the Louisiana Supreme Court held that a dredging

---

[5] This Court has found no decisions by the remaining Louisiana appellate courts addressing this issue.

contractor who negligently damaged a natural gas pipeline could not be held liable for the economic

losses incurred by the pipeline owner's contract customer (Texaco), who was required to seek and

obtain gas from another source during the period of repair. The Court found the damages incurred

by Texaco (increased cost of obtaining natural gas elsewhere) did "not fall within the scope of the

protection intended by the law's imposition of a duty on dredging contractors not to damage

pipelines negligently." Id. at 1060.

While PPG is factually dissimilar in that it involved damage to property of a third party rather

than personal injury to an employee of a third party, it is indicative of the Louisiana Supreme Court's

limitation on damages provided by Louisiana Civil Code article 2315 through its use of the duty-risk

analysis, particularly the "scope of the risk" element.[6] In PPG, the Court reasoned:

> There is clearly an ease of association in the present case between the rule of law
> which imposes a duty not to negligently damage property belonging to another and
> the risk of injury sustained by Texaco because of the damage to its property. As
> noted, however, a rule of law is seldom intended to protect *every* person against *every*
> risk. It is much more difficult to associate the same rule of law, in terms of the
> moral, social and economic values involved with the risk of injury and the economic
> losses sustained by the person whose only interest in the pipeline damaged by the
> tortfeasor's negligence arose from a contract to purchase gas from the pipeline
> owner. It is highly unlikely that the moral, social and economic considerations
> underlying the imposition of a duty not to negligently injure property encompasses
> the risk that a third party who has contracted with the owner of the injured property
> will thereby suffer an economic loss.
>
> Moreover, imposition of responsibility on the tortfeasor for such damages could
> create liability in an indeterminate amount for an indeterminate time to an
> indeterminate class. If any of PPG's employees were laid off while PPG sought to
> obtain another source of fuel for its plant, they arguably sustained damages which in
> all likelihood would not have occurred *but for* defendant's negligence. If any of

---

[6] Under Louisiana law, claims of negligence are evaluated using the "duty-risk analysis." Under
that analysis, "plaintiff must prove that the conduct in question was a cause in-fact of the resulting harm,
the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and
the risk of harm was within the scope of protection afforded by the duty breached." Daye v. General
Motors, Corp., 720 So.2d 654, 659 (La. S.Ct. 1998).

PPG's customers had contracted to purchase products that PPG could not produce and deliver because of the accident, perhaps they sustained damages which in all likelihood would not have occurred *but for* defendant's negligence. Because the list of possible victims and the extent of the economic damages might be expanded indefinitely, the Court necessarily makes a policy decision on the limitation of recovery of damages. Id. at 1061 (internal quotations and citation omitted).

In spite of the above, intervenor argues "the Louisiana Supreme Court has often extended the tortfeasor's liability for wrongful conduct beyond the primary party sought to be protected by the rule against such conduct." [Doc. 32, p. 4]. In support of its position, intervenor cites Clomon v. Monroe City School Board, 572 So.2d 571 (La. 1990); Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La. 1990); Vicknair v. Hibernia Bank Building Corp., 479 So.2d 904 (La. 1985)(superceded by statute); and Cleco Corp. v. Johnson, 795 So.2d 302 (La. 2001). Lejeune and Clomon are distinguishable from the matter at hand. Those cases deal with mental anguish damages (specifically, negligent infliction of emotional distress) suffered by a third person, and the limitations imposed on mental anguish damages under the "bystander recovery rule."

Vicknair is also distinguishable. In Vicknair, an action was brought for injuries to a mother and child, which were sustained when a fire alarm sounded in the building in which the mother worked, requiring her to descend twenty-one flights of stairs, and allegedly causing premature delivery of her child. The fire alarm was set off when employees of an independent contractor doing renovation work in the building caused an unmarked fire alarm wire to be broken. The Court found that both plaintiff's employer and the independent contractor had a duty to ensure no fire alarm wires were broken, and such a duty encompasses within its scope the risk that a pregnant woman would experience emotional distress and descend many flights of stairs, causing a premature delivery." Id. at 909-910. In the instant matter, Mr. Berberich obviously has a cause of action against his tortfeasor, just as plaintiff did in Vicknair. Vicknair did not involve plaintiff's employer attempting

to recover for losses it sustained due to its employee's injuries and, as such, is not pertinent to the issue before this Court.

Cleco, on the other hand, is relevant to the matter before this Court. In Cleco, the issue before the Supreme Court was "whether a utility company has a cause of action, through subrogation, to recover for direct physical damages sustained by its customers to their electrical equipment caused by a power surge when a driver of a dump truck struck a utility pole." Id. at 303. In Cleco, defendant backed his truck into a utility pole owned by Cleco, causing a voltage surge. The surge caused property damage to electrical appliances and equipment of various Cleco customers. Cleco paid approximately $95,000 to the 187 residents and businesses in the area to compensate them for damages to their electrical equipment. Cleco subsequently filed suit against defendant to recover the amounts paid to its customers for their damages, alleging it had been subrogated to its customer's rights. The two issues presented in the case were: (1) whether Cleco's customers had a claim against the driver of the dump truck for the damages incurred, and (2) whether Cleco was entitled to assert such claims on behalf of its customers. Because the writ application was not granted to address the issue of whether Cleco was subrogated to the claims of its customers, the court did not examine that issue, but rather, examined whether Cleco's customers were allowed under the law to assert a claim against defendant for their damages.

The appellate court below had held that the damages suffered by Cleco's customers "[did] not fall within the scope of the duty imposed on the truck driver not to negligently damage Cleco's power lines," and therefore, "there [was] insufficient ease of association between the duty breached and the damages sustained." Cleco at 305. Cleco argued, as Dutil argues in the instant matter, that it was error to apply a rigid prohibition against third party damage claims, rather than analyzing and

applying the "ease of association" test. Id. [Doc. 32, p. 9]

The Cleco court distinguished the facts in PPG from those in Cleco by reasoning that Cleco was not attempting to recover from economic damages it sustained as a result of damage to a third party's property, but rather was seeking to recover amounts it expended as a result of damage to its own property, the pole, which led to damages to its customer's property. The Court reasoned that "a trier of fact may find that there is an ease of association between a person who damages an electrical pole, causing a power surge and the damage to electrical equipment in the homes and businesses supplied with power by the damaged electrical pole." Id. at 306. The Court reasoned defendant's action was not an indirect cause of damage to the equipment, but was instead a direct cause.

Dutil argues that this Court should not recognize a brightline prohibition forbidding a corporation from recovering damages resulting from personal injury to its shareholder, and that the cases cited by Patterson erred in recognizing such a rule, rather than conducting a duty-risk analysis as required by Louisiana law. Dutil further argues that the cases cited by defendant are incorrectly based upon an historically recognized limitation in contract related cases, which is not the case in the instant matter. The Court disagrees with Dutil's argument. The cases cited by defendant to which intervenor refers address who is the proper party to bring an action for damages. Many involve factual scenarios virtually identical to the matter at hand, i.e., a third party corporation seeking economic damages sustained when its sole shareholder is injured by a tortfeasor. Dutil bases this particular argument on the premise that the cases cited by Patterson all stem from the Louisiana Supreme Court's decision in Forcum-James Co. v. Duke Transp. Co., 93 So.2d 228 (La. S.Ct. 1957). Dutil argues Forcum-James recognized a limitation of the scope of risk element in contract cases,

which was erroneously extended to tort law in the cases cited by Patterson. This is not entirely accurate. Forcum-James was based on both contract and tort and held, "It is a basic principle of the law that a tort-feasor is responsible only for the direct and proximate result of his acts and that, where a third person suffers damage by reason of a contractual obligation to the injured party, such damage is too remote and indirect to become the subject of a direct action ex delicto, in the absence of subrogation." Id. at 230. In fact, that holding is equally applicable to the instant matter. In the case before this Court, the tortfeasor (Patterson) is responsible only for the direct and proximate result of his acts and, where a third person (Dutil) suffers damage by reason of a contractual obligation to the injured party (the contractual relationships between Dutil and its sole shareholder, CEO and COO, Mr. Berberich), such damage is too remote and indirect to become the subject of a direct action ex delicto, in the absence of subrogation.

Finally, intervenor argues the methodology used in the cases cited by Patterson has implicitly been overruled by Cleco. While it can be argued that Cleco and PPG are contradictory, the court in Cleco was careful not to overrule PPG, but rather to distinguish Cleco on the facts. However, the confusion that arises from the two decisions will be discussed below.

This Court would first point out that the Louisiana appellate court decisions are more analogous to the instant matter than the Louisiana Supreme Court decisions noted above, not only by the issue presented (whether a corporation has a claim against a tortfeasor for the corporation's lost profits or other consequential damages that result from personal injury to the corporation's employee), but factually as well (personal injury damages versus property damages). However, this Court has an obligation to determine, in its best judgment, how the highest court of Louisiana would resolve the question if presented to it. In looking at the guidance provided by the Louisiana Supreme

Court, <u>Cleco</u> and <u>PPG</u> appear to reach contradictory results. The <u>Cleco</u> court seems to distinguish

its ruling from <u>PPG</u> by finding that Cleco suffered a more direct loss than PPG.[7]

As <u>PPG</u> and <u>Cleco</u> seem to be contradictory, this Court will follow the directive of the

Louisiana Supreme Court laid out in <u>PPG</u> that states:

> A judge, when determining whether the interest of the party seeking recovery of
> damages is one that falls within the intended protection of the rule of law whose
> violation gave rise to the damages, should consider the particular case in terms of the
> moral, social and economic values involved, as well as with a view toward the ideal
> of justice.

<u>PPG</u> at 1061.

In the instant matter, there is no doubt that Mr. Berberich is entitled to recover for the direct

physical damages to his person if he proves the damages were caused by defendant. Mr. Berberich

is clearly the primary victim of the allegedly negligent act of defendant. Dutil, on the other hand,

is a secondary victim of Patterson's allegedly negligent act. While there would be no doubt, if

---

[7] The Court reasoned Cleco's damages were more direct than the damages in <u>PPG</u>, because in
<u>Cleco</u>, there was no "indeterminate class" due to the fact Cleco had compensated 187 customers. That
distinction gives this Court pause, as it does not address the issue of whether those third parties (Cleco's
customers) had a cause of action against defendant in that matter. The primary distinction this Court sees
between <u>PPG</u> and <u>Cleco</u> is that in <u>Cleco</u>, the underlying injured party (Cleco) actually paid damages to
the third parties, whereas in <u>PPG</u>, the underlying injured party (the pipeline owner) paid no damages to
the third party (Texaco).

It is of further interest to note the dissenting opinion of Justice Victory in the <u>Cleco</u> case. Justice
Victory argued Cleco should have been prohibited from recovery under the concepts announced in <u>PPG</u>,
stating:

> This Court made a 'policy decision' in <u>PPG Industries</u> almost twenty years ago not to
> allow damages similar to the damages in this case using the 'ease of association' test
> 'because the list of possible victims and the extent of the economic damages might be
> expanded indefinitely.' In my view, having established the law in 1984, the Court should
> refrain from expanding recovery of damages in this area and leave such "policy
> decision[s]" to the legislature. Part of the majority's error is in characterizing the
> damages to Cleco's customers' equipment as "direct physical damage".... However, the
> only party to suffer "direct physical damage" to its property was Cleco. <u>Id</u>. at 307- 308.

Patterson's negligence is proven at trial, that "but for" Patterson's act, Dutil would not have incurred damages due to the injuries suffered by its sole shareholder, that should not allow Dutil to recover when one looks to the moral, social and economic values involved with a view toward the ideal of justice. As stated in PPG, "...a rule of law is seldom intended to protect *every* person against *every* risk. ... Imposition of responsibility on the tortfeasor for such damages could create liability in an indeterminate amount for an indeterminate time to an indeterminate class." PPG at 1061. Here, if any of Dutil's employees are laid off while Mr. Berberich recovers, they arguably will sustain damages which would not have occurred but for defendant's negligence. If any of Dutil's customers have had to find another company to build their fence, they may have a claim for damages which likely would not have occurred but for Patterson's negligence. The list of victims and extent of damages could expand indefinitely. The Louisiana appellate courts have made a policy decision on the limitation of recovery for third party corporations who suffer economic losses due to injury to their sole shareholder; that decision has not been overruled by the Louisiana Supreme Court.

Additionally, the Court notes that if Mr. Berberich is indeed as closely tied to his corporation as Dutil argues, then "full recovery can be had under the broad umbrella of loss of earning capacity." Fuksman at 75. Allowing Dutil to recover its claimed damages in addition to awarding loss of earnings to plaintiff could potentially result in double recovery.[8] Finally, the Court would point out that corporations wishing to protect themselves from such losses are not without remedy as companies whose economic welfares are so precariously dependant upon one person, traditionally

---

[8] While plaintiff/intervenor's counsel has asserted to this Court that it is not his intent to obtain double recovery, but that he has merely brought this intervention due to the jurisprudence stating that it is the corporation who must sue for damages it incurred in these types of situations, this Court is duty bound to rule in accordance with Louisiana law, not equity.

have been able to obtain insurance, such as keyman insurance, in order to cover such risks and losses.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss [Doc. 30] filed by defendant, Patterson Services, Inc. is GRANTED in its entirety, as the Court finds Intervenor has failed to state a claim upon which relief can be granted.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 24 day of September, 2006.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE